## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

Garth Campbell and       :
Melissa Campbell,       :
      :
          Plaintiffs,       :
      :
        vs.       :      Civil Action No. _____
      :
Lykens Township,       :      **JURY TRIAL DEMANDED**
Marty Sowers, Codes and Zoning       :
Officer of Lykens Township, in his       :
personal capacity only, and       :
Light-Heigel & Associates, Inc.,       :
      :
         Defendants. :

### Complaint

Plaintiffs Garth Campbell and Melissa Campbell by undersigned counsel Mette, Evans & Woodside file this complaint against Defendants Lykens Township, Marty Sowers, Codes and Zoning Officer of Lykens Township, in his personal capacity only, and Light-Heigel & Associates, Inc.

## I.     Parties

1.     Plaintiffs Garth Campbell ("Garth") and Melissa Campbell ("Melissa") (collectively "Campbells"), husband and wife, are owners of real property in Lykens Township, Dauphin County, Pennsylvania.

2.      Defendant Lykens Township ("Township") is a political subdivision of the Commonwealth of Pennsylvania that maintains its principal place of business at 2073 East Middle Road, Lykens, Dauphin County, Pennsylvania.

3.      Defendant Marty Sowers ("Sowers") was at all relevant times hereto the Lykens Township Codes and Zoning Officer and an employee or authorized agent of, Defendant Light-Heigel & Associates, Inc.  Sowers is sued in his personal capacity only.

4.      Defendant Light-Heigel & Associates, Inc. ("Light-Heigel") is Lykens Township's appointed engineer and codes and zoning enforcement firm and maintains a principal place of business at 320 Plaza Drive, Palmyra, Pennsylvania.

5.      Sowers' actions in his position as Codes and Zoning Officer in this matter represented the official policy of the Board of Supervisors of Lykens Township as to land use matters affecting the development of the Campbells' real estate in Lykens Township.

## II.     Jurisdiction & Venue

6.      Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, conferring original jurisdiction upon the various district courts of the United States for civil actions authorized by law to be commenced by any person to recover damages under any Act of Congress.  This suit is authorized pursuant to 42 U.S.C. § 1983.  An award of costs and attorneys fees is authorized pursuant to 42 U.S.C. § 1988.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b), because the Middle District of Pennsylvania is the district in which a substantial part of the events giving rise to the claim occurred.

### III.   Facts

8.      The Campbells incorporate the previous paragraphs by reference as if set forth at length.

9.      The Campbells own a 33.14 acre parcel of real estate located at 269 Picnic Road, Lykens Township, Dauphin County, Pennsylvania ("Property").

10.     The Campbells reside at the Property and utilize the Property for agricultural purposes, including for raising prize-winning show cattle and harvesting hay.

11.     In 2022, the Campbells began to plan constructing an agricultural building on their property to house their cattle and for hay storage ("Building").

12.     The Campbells' planning involved determining the dimensions and design of the Building which would accommodate their purpose.

13.     On or about March 8 or 9 of 2022, Garth contacted the Township and left a message inquiring about his permitting obligations under Township ordinances.

14.     The following day, the township secretary provided Garth with a form to apply for a zoning permit

### The Zoning Application

15.    The Campbells submitted an application for a zoning permit ("Zoning Application") to the Township on or about April 5, 2022.

16.    The Zoning Application sought permission to construct the Building, projected by the Campbells to be 52' x 120' in size.

17.    Three days later, on April 8, 2022, Jacey Knaub ("Knaub"), an employee or authorized agent of Defendant Light-Heigel, requested that the Campbells submit a site plan to accompany the Zoning Application.

18.    On or about April 13, 2022, the Campbells submitted a site plan.

19.    Following the site plan's submission, Knaub again emailed Garth on April 20, 2022, stating this time that a stormwater management plan was also required, but without providing any further explanation for this additional requirement.

20.    Garth was familiar with other buildings in the Township and questioned whether a stormwater management plan was in fact required for the Building.

21.    Garth contacted Brandon Davis, a supervisor in the Township, inquiring about stormwater management plans and any criteria for exemptions that might relate to the Building.

22.    Supervisor Davis was not able to answer Garth's questions and referred Garth to Sowers.

4

23.     During a telephone call on April 21, 2022, Garth asked Sowers questions about the Township's Stormwater Management Ordinance ("SWMO"), inquiring whether an exemption from submitting a stormwater management plan might apply to his Building.  A copy of the SWMO is attached as Exhibit A.

24.     During such call, Sowers advised that he was not familiar with the improvements being proposed on the Campbells' Property and was unaware of the Zoning Application.

25.     Sowers also gathered information from Garth during the call relating to the Building and advised Garth that he would look into the matter and respond to Garth's questions.

26.     The Campbells received no correspondence from Sowers or any other party regarding the Zoning Application for nearly two months, until June 14, 2022, when Garth received an email from Knaub, who stated that she was attempting to confirm that she had provided a stormwater management plan permit application to the Campbells.

27.     After months had gone by and the Campbells had still received no correspondence about the Zoning Application or any contact from Sowers, on or about September 12, 2022, the Campbells began construction of the Building.

28.     While at the Gratz Fair later that month, Garth happened to be speaking with a neighbor about construction of the Building.

29.    The neighbor asked Garth about the permitting requirements in connection therewith.

30.    Garth stated that, despite his application and inquiries, no permits had been issued, and neither the Township nor Sowers had responded to Garth's inquires in the spring.

31.    Supervisor Davis, who was also present during the conversation, stated to Garth, "Wait 'til Marty gets a hold of you."

32.    Garth understood the reference to "Marty" to be to Sowers in his capacity as Zoning and Codes Officer for Lykens Township.

33.    Garth's response to Davis was, "Have him call me – I'm still waiting on my permits."

34.    The shell of the Building was completed by the end of September in 2022, and the Building itself was completed on or about October 31, 2022.

35.    On October 25, 2022, the Campbells received a "Notice of Zoning Violation" ("Notice of Violation") citing them for constructing the Building without a zoning permit.  A copy of the Notice of Violation is attached as Exhibit B.

36.    The Notice of Violation stated in relevant part,

It has been brought to the Township's attention that a pole building has been constructed without a zoning permit. Such actions are in direct violation with Section 2202.A of the Lykens Twp. Zoning Ordinance as adopted and amended.

> A Zoning permit was applied for but never issued. A storm water management plan is required for this project. The Zoning permit will not be issued until the storm water management plan is approved.

Exhibit B.

37.     Two days later, on October 27, 2022, the Campbells responded in writing to the Notice of Violation, stating that they believed the zoning ordinance had been either misinterpreted or misapplied by Sowers. A copy of the Campbells' response is attached as Exhibit C.

38.     Lykens Township's SWMO actually encompasses two ordinances: Lykens Township Ordinance 2011-2 ("2011 Ordinance") and Lykens Township Ordinance 2023-1 ("2023 Ordinance), which amended the 2011 Ordinance (collectively "SWMO"). See Exhibit A.

39.     Every property in the Township not meeting the exemption criteria stated in the SWMO must have a stormwater management plan approved by the Township.

40.     Under the 2011 Ordinance, an exemption became available when, among other things, a property had no more than 5,000 square feet of impervious surface area.

41.     The 2023 Ordinance modified the exemption criteria to increase the maximum allowable impervious surface area qualifying for an exemption to 10,000 square feet.

42.     Exemption under the 2023 Ordinance also depends upon there being sufficient separation distances between points of stormwater discharge and various enumerated features such as property lines, streets, and waterways to determine whether a landowner is exempt from preparing a stormwater management plan.

### The Campbells Attempt to Gather Information from the Township Supervisors

43.     Throughout the months of November and December of 2022, Garth attended several meetings of the Supervisors where he raised questions about the Township's stormwater management criteria, including the SWMO's exemption criteria as applied to the Property.

44.     The Campbells voiced to the Township Supervisors several arguments in support of their objection to the Notice of Violation, including that: (i) the Building fell within the 2023 Ordinance exemption criteria (which had been routinely applied since 2014), (ii) the SWMO's definition of "impervious surface" was ambiguous, and (iii) several other similar buildings had been subject to a more lenient application of the SWMO and its exemption criteria.

45.     At such meetings, Sowers was combative in response to Garth's questioning and changed his stated version of events multiple times, growing more agitated as Garth continued to reveal Sowers' inaction to the Supervisors, even shouting at Garth when confronted with evidence such as telephone records that disproved Sowers' claim that he had never spoken with Garth.

46.    Additionally, Sowers accused the Campbells of various other zoning and codes violations relating to the construction of a retaining wall around the Building, the water source for the Building, and driveway access to the Building.

47.    None of Sowers' complaints resulted in the issuance of a zoning violation notice, as they were all meritless and contrary to the various governing ordinances.

48.    Over the course of these months, the Campbells learned that Sowers had erroneously included the gravel driveway accessing the Building in his calculation of impervious surface for the Property.

49.    Such was the catalyst for the Township's erroneous position that the Campbells' Building required a professionally engineered stormwater management plan: the Building and driveway on the Property exceeded a combined surface area of 10,000 square feet.

50.    In addition to the arbitrary and capricious misapplication of the SWMO by Sowers and the Township, the inclusion of the gravel driveway as an impervious surface was contrary to how the Township historically had applied the SWMO.

51.    The Campbells challenged the Notice of Violation and Sowers' inaction generally, and a hearing was held before the Lykens Township Zoning Hearing Board ("ZHB") on May 3, 2023.

52.     At the hearing, the Campbells presented testimony and evidence demonstrating the compliance of both their Building and Property with applicable zoning and land use requirements.

53.     In support, the Campbells made two principal arguments.

54.     First, the Campbells argued that the SWMO's definition of "impervious surface" was at best ambiguous and could not be applied to their Building and Property; as a corollary to this, the Campbells argued that that the Building and Property did in fact meet the SWMO's substantive exemption criteria as the ordinance was written.

55.     Secondly, the Campbells argued that the Township could not apply the SWMO as it was attempting to do because of the disparate enforcement of the ordinance against the Campbells' Building and Property vis-à-vis comparator properties in the Township.

56.     The Campbells provided evidence to the ZHB that specifically identified several comparator properties ("Comparator Properties").

57.     Two such comparator properties are owned by Supervisor Welker and Supervisor Davis.

## The Comparator Properties

### i. First Comparator (Supervisor Welker's Property)

58.    At all times relevant hereto, Dauphin County Tax Parcel Number 39-021-002 has been owned by Supervisor Welker ("Welker Property").

59.    The Welker Property contains a building and driveway constructed since the implementation of the Township's SWMO in 2011.

60.    Pursuant to documents obtained through the Township's response to a Right-to-Know Request pertaining to the Welker Property, the Campbells have identified material similarities between their Property and the Welker Property as follows,

    a. The Welker Property involves a 4,800 square foot building and an approximately 2,500 square foot gravel driveway – a total area of approximately 7,300 square feet – which is in excess of 5,000 square foot maximum allowable "impervious surface" area to qualify for an exemption from a stormwater management plan under the Township's 2011 Ordinance, the ordinance in effect as of the time of construction.

    b. The application for zoning permit submitted for the Welker Property contained no identification of calculation of driveway coverage to be added to "impervious coverage" showing that it was in violation

11

of the 5,000 square foot impervious coverage maximum area per lot as prescribed under the Township's 2011 SWMO.

c. The submission contained hand-sketched plans rather than professional, engineered plans, as are required unless the exemption applies.

d. The Township engineer confirmed qualification for an exemption under the 2023 Ordinance criteria based solely on separation distance from a stream and without consideration of the gravel driveway pushing total "impervious surface" area above the 2011 Ordinance's stated 5,000 square foot maximum.

e. The Township tacitly acknowledged the Property's exemption from need for approved stormwater management plan by granting a zoning placard following Welker's emailed request for an exemption from such requirement.

**ii. Second Comparator (Supervisor Davis's Property)**

61.    At all times relevant hereto, Dauphin County Tax Parcel Number 39-19-006 has been owned by Supervisor Davis ("Davis Property").

62.    The Davis Property contains a building and driveway constructed since the implementation of the Township's SWMO in 2011.

63.    Pursuant to documents obtained through the Township's response to a Right-to-Know Request pertaining to the Davis Property, the Campbells have identified material similarities between their Property and the Davis Property as follows,

      a. The Davis Property involves a 5,200 square foot building, an approximately 4,500 square foot gravel driveway, and a 400-500 square foot porch – a total area of 10,200 square feet – which is in excess of 5,000 square foot maximum allowable "impervious surface" area to qualify for an exemption from a stormwater management plan under the Township's 2011 SWMO, the ordinance in effect as of the time of construction.

      b. The application for zoning permit submitted for the Davis Property contained no identification of calculation of driveway coverage to be added to "impervious coverage" showing that it was in violation of the 5,000 square foot impervious coverage maximum area per lot as prescribed under the Township's 2011 SWMO.

      c. The submission contained hand-sketched plans rather than professional, engineered plans, as are required unless the exemption applies.

    d. The Township tacitly acknowledged the Property's exemption from need for approved stormwater management plan by granting a zoning permit without requiring a stormwater management plan.

### iii. Third Comparator Property

64.    Dauphin County Tax Parcel Number 39-020-011 is a property within Lykens Township ("Third Comparator Property").

65.    The Third Comparator Property contains a building and driveway constructed since the implementation of the Township's SWMO in 2011.

66.    Pursuant to documents obtained in the Township's response to a Right-to-Know Request pertaining to the Third Comparator Property, the Campbells have identified material similarities between their Property and the Third Comparator Property as follows,

    a. The property comprises a 7,200 square foot building and an approximately 5,000 square foot gravel driveway accessing the building, which combined area of 12,200 square feet exceeds the maximum allowable impervious surface area under both the 2011 Ordinance and the 2023 Ordinance.

    b. Despite the size of the building and driveway, neither the Township nor Light-Heigel has any record of an application for zoning permit or records relating to stormwater management, the only record

tendered in response to the Campbells' Right-to-Know request being a zoning placard issued by Sowers.

67.     None of the Comparator Properties' driveways were considered by the Township when determining whether the stormwater management ordinance applied to their projects except for the Welker Property.

68.     Supervisor Welker's application for exemption was approved because of apparent compliance with separation distances, a separation distance requirement with which the Campbell's Building also complies, but without regard to the extent of impervious surface created by the gravel driveway on the property.

69.     None of the Comparator Properties was required to submit professionally engineered plans in order to obtain a zoning permit or exemption from approved stormwater management plan.

70.     All Comparator Properties, if including gravel driveways along with buildings and other impervious surfaces, have surface coverage area that exceeded the Township's SWMO limit of impervious surface area at the time of their development.

71.     Even though the Township allowed the Comparator Properties to be developed with impervious surface areas (including gravel driveways) significantly in excess of the maximum square footages under the then-applicable SWMO, the Township is applying the SWMO to the Campbells' Property in a way that

15

disqualifies the Property from an exemption under the SWMO because of their gravel driveway.

### The ZHB's Grant of the Zoning Permit (With a Condition)

72.     At the conclusion of an approximately three-and-a-half hour hearing, the ZHB announced its ruling on the Campbells' challenge to the denial of a zoning permit, which decision was later confirmed by letter from the ZHB's solicitor dated May 4, 2023 ("Decision").  A copy of the Decision is attached as Exhibit D.

73.     In relevant part, the Decision states,

The Board grants the Appeal of Garth and Melissa Campbell from the Zoning Enforcement Notice dated October 21, 2023 [sic][1] and directs that the Zoning Permit be issued once the pending stormwater management process of completer [sic][2] with the Township Board of Supervisors.

Exhibit D.

74.     When the ZHB announced its decision, Sowers retorted to the ZHB that it was not the decision he had anticipated.

75.     Supervisor Davis – who had first overheard the discussion between Garth and his neighbor at the Gratz Fair in September of 2022 and had said, "Wait 'til Marty gets a hold of you" – attended the ZHB hearing and was present for the presentation of all testimony and evidence.

_____

[1] The date of the Notice of Violation was October 21, 2022.
[2] Plaintiffs believe that this statement should state "is completed" and that a typographical error was made in transcription.

**More on the SWMO, a Review Letter, and a Corrupt Offer from the Township**

76.     On February 22, 2023, the Township passed the 2023 Ordinance which codified the exemption criteria purportedly enacted in 2014 that the Township had been applying since 2014.

77.     The 2023 Ordinance also established an application procedure for any party seeking to obtain a stormwater management plan exemption.

78.     On March 30, 2023, the Campbells submitted to the Township a formal application for exemption from the requirement of submitting a stormwater management plan under the SWMO ("Exemption Application"). A copy of the Exemption Application is attached as Exhibit E.

79.     On April 26, 2023, at approximately 2:30 p.m., the Campbells received an email from Lee A. Strause, Jr., an engineer in training employed by Light-Heigel, attaching a revised review letter ("Revised Review Letter"). A copy of the Revised Review Letter is attached as Exhibit F.

80.     The Revised Review Letter recommended that the Supervisors deny the Campbells' Exemption Application because: (i) Sowers on behalf of Light-Heigel, the Township's engineering firm, continued to maintain that the gravel the Campbells had put in their driveway on the Property was an impervious surface

under the SWMO, and (ii) the Campbells had not submitted professional plans containing measurements of the Building and driveway area

81.    The Campbells had never received an original review letter pertaining to their Exemption Application.

82.    The Campbells had also not received any notice prior to the Revised Review Letter that their Exemption Application would be considered *at that very evening's meeting* of the Board of Supervisors, i.e., on April 26, 2023, just hours after the Campbells received the letter.

83.    After learning from the Township Secretary *that afternoon* that the Campbells' Exemption Application had been added to the Supervisors' agenda, the Campbells and their counsel scrambled in order to attend the Board of Supervisor's meeting.

84.    At the meeting, Sowers recommended to the Board of Supervisors that the Campbells' Exemption Application be denied on the two bases stated in the Revised Review Letter.

85.    Rather than voting on the Exemption Application, the Supervisors entered into an illegal executive session, joined by Sowers, wherein they directed the Township Solicitor, Joseph D. Kerwin, Esquire ("Kerwin"), to make an offer to the Campbells.

86.    Kerwin privately offered to the Campbells that if the Campbells would remove all the gravel they had put into their driveway and thereby bring the total area of impervious surface under 10,000 square feet (so calculated under the Supervisors' erroneous reading of the SWMO), the Supervisors would grant the exemption from the SWMO's requirement of a stormwater management plan.

87.    The Supervisors through Kerwin further assured the Campbells that if they would take such action, the Campbells could then put the gravel back onto their Property at a later date and that the Township would "look the other way" and not enforce the impervious surface area requirement of the SWMO against them.

88.    Kerwin specifically stated that the proposal would not be reduced to writing or otherwise memorialized, thus leaving the Campbells without any evidence going forward to prove the existence of such agreement to protect them against later prosecution or civil enforcement action.

89.    In sum, the Supervisors through Kerwin promised non-enforcement of the Township's own SWMO – an ordinance that the Supervisors asserted required the Campbells to submit a stormwater management plan for the Property because of the gravel driveway – if the Campbells would go through the ridiculous exercise of removing all the gravel from their driveway and then reinstall it at some future date, at which time the Supervisors would "look the other way" and not pursue the Campbells for non-compliance with the SWMO.

90.     The Campbells were nonplussed by the Supervisors' bizarre proposal and requested time to consider it before providing a response.

91.     The Supervisors tabled any vote on the Exemption Application and adjourned the meeting.

92.     By letter dated May 1, 2023, the Campbells rejected the Supervisors' offer in writing and requested that their Application be placed on the agenda for the next meeting of the Supervisors.   A copy of the Campbells' letter is attached as Exhibit G.

93.     The next regular meeting of the Supervisors was scheduled for May 24, 2023.

94.     The  Campbells and their counsel met with the Supervisors at 6 p.m. on such date, which was immediately prior to the regular meeting scheduled to begin at 7 p.m.

95.     During such time, the Campbells presented their Exemption Application to the Supervisors and stated the reasons why they believed their Property fell within the SWMO's exemption.

96.     The Campbells also identified the Comparator Properties Township which were either non-compliant with the SWMO or for which an exemption under the SWMO had been granted on more lenient terms than those which the Supervisors were applying to the Campbells' Property.

97.    Two such buildings identified by the Campbells as having received more lenient treatment by the Township under the SWMO were located on two separate properties, owned by Supervisors Davis and Supervisor Welker, respectively.

98.    Supervisor Welker took particular offense at the Campbells pointing out that his project, if subject to the same criteria the Supervisors were applying to the Campbells' Property, would also require a stormwater management plan, specifically questioning what would happen to his building if the Supervisors would grant the Campbells' Exemption Application.

99.    Supervisor Welker further demanded to know how the Campbells had come into possession of the documents pertaining to the construction on his property, to which the Campbells responded that they had obtained the publicly available documents through a Right-to-Know Request submitted to the Township.

100.    Supervisor Welker moreover accused the Campbells of "not having all the facts" pertaining to the construction of his building, to which the Campbells responded that they had all the facts which the Township had retained in its official records and invited Supervisor Welker to elaborate on the "facts" which permitted his building to be subject to a different standard than that which was being applied to the Campbells' Building.

101.   Supervisor Welker had been a member on the Township's Planning Commission at the time his building was constructed.

102.   After the regularly scheduled meeting was called to order, the Supervisors delayed deciding the Campbells' Exemption Application until all other items on the agenda were acted upon.

103.   The first item that was addressed on the agenda was a crime report for the benefit of the Supervisors and the public given by a Trooper with the Pennsylvania State Police who attended the meeting.

104.   At the conclusion of the PSP Trooper's report Supervisor Schadel invited the Trooper to stay for the remainder of the meeting because he "might be needed" later, alluding to the decision that the Supervisors would make on the Campbells' Exemption Application.

105.   With the Exemption Application as the last item of business remaining on the meeting agenda, the Supervisors entered into an illegal executive session to deliberate on whether to grant or deny the Application, despite having deliberated on another stormwater management item in full public view earlier in the meeting.[3]

---

[3] The illegal executive session and deliberation therein is the subject of separate state court litigation filed by the Plaintiffs in the Dauphin County Court of Common Pleas at Docket Number 2023-CV-4500.

106.   After the Supervisors had returned from their illegal executive session, Supervisor Davis called a vote on the Application, and the Supervisors voted unanimously to deny the Campbells' request.

107.   The Supervisors did not announce, either prior to or after the executive session, the purpose for which they had gone into executive session.

108.   Upon information and belief, the Campbells aver that the purpose of the executive session was to deliberate on and decide their Exemption Application outside of public view.

109.   The Supervisors' and Sowers' course of action in targeting the Campbells and their Building exhibits an intent to apply the SWMO arbitrarily and capriciously against the Campbells and in a manner different than that which has been applied to other, similarly situated parcels of real estate in the Township, including to land owned by two of the sitting three Supervisors in the Township.

110.   The Supervisors' actions also exhibit a pattern of self-interested enforcement and application of the SWMO in a manner which deprives the Campbells' of the full, fair and equitable use of their Property.

**FIRST CAUSE OF ACTION**
**Violation of Substantive Due Process**
**U.S. Const. Amend. XIV**
**(42 U.S.C. § 1983)**

111.   The Campbells incorporate the previous paragraphs by reference as if set forth at length.

112.   The Campbells' Property and Building have been negatively affected by the Township's arbitrary decision to deny their Exemption Application.

113.   The Supervisors' self-dealing and self-insulating behavior in applying an expansive interpretation of "impervious surface" to include gravel driveways under the SWMO against the Campbells' Property while excluding their own properties from such restrictive enforcement shocks the conscience.

114.   The Supervisors' decision to deny the Campbells' Exemption Application in a manner and for reasons not applied to their other properties in the Township (including the Welker Property and the Davis Property) is inequitable and deprives the Campbells of the ability to fully and fairly enjoy the use of their Property.

115.   The wrongful and discriminatory application of the SWMO has been implemented through Sowers as an employee or authorized agent of Light-Heigel.

WHEREFORE, the Campbells pray that the Court ENTER JUDGMENT in their favor and against Lykens Township, Marty Sowers in his personal capacity, and Light-Heigel & Associates, Inc., awarding nominal damages, compensatory damages, attorneys fees and costs, enjoining prosecution of the Campbells under the SWMO for any failure to have an approved exemption from the SWMO for their Property, and granting whatsoever other relief as is just and equitable.

## SECOND CAUSE OF ACTION
### Denial of Equal Protection of Laws – Class of One
### U.S. Const. amend. XIV
### (42 U.S.C. § 1983)

116.    The Campbells incorporate the previous paragraphs by reference as if set forth at length.

117.    The Township's demands for the preparation, submission, and implementation of a stormwater management plan as described herein were irrational and wholly arbitrary.

118.    Sowers' Notice of Violation to the Campbells was irrational and wholly arbitrary.

119.    The Campbells have been treated differently from other, similarly situated real estate owners by the inclusion of the gravel driveways from the definition of "impervious surface" under the Township's stormwater management ordinances, including land owned by two of the three Supervisors, with no rational basis for such difference in treatment.

120.    The stormwater management plan insisted upon by the Township and Sowers for issuance of a zoning permit has not been required by the Township for at least three other comparator properties within Lykens Township.

121.    Moreover, as the history of the Supervisors' and Sowers' conduct reveals, the Campbells have been treated in an arbitrary and capricious manner, intended to single the Campbells out and saddle them with expensive and

unnecessary permitting obligations not required of other landowners who have gravel driveways, including two of the three Supervisors.

122.   Sowers' campaign against the Campbells was in furtherance of the Supervisors' self-interested application of the SWMO and moreover exhibits an intent to treat the Campbells differently from other similarly situated property owners in the Township.

123.   The denial of a stormwater management exemption to the Campbells was wholly arbitrary and the product of improper motivations by the Township and Sowers.

124.   As a direct and proximate cause of such unequal treatment, the Campbells have suffered damages for which they must be compensated.

125.   Additionally, the Campbells be protected from prosecution or other adverse action by the Township, Sowers, and Light-Heigel for lack of recognized exemption under the SWMO or zoning permit by reason of the gravel driveway on the Campbells' Property.

WHEREFORE, the Campbells pray that the Court ENTER JUDGMENT in their favor and against Lykens Township, Marty Sowers in his personal capacity, and Light-Heigel & Associates, Inc., awarding nominal damages, compensatory damages, attorneys fees and costs, enjoining prosecution of the Campbells under

the SWMO for any failure to have an approved exemption from the SWMO for

their Property, and granting whatsoever other relief as is just and equitable.

### THIRD CAUSE OF ACTION
### SWMO is Void for Vagueness
### U.S. Const. amend. XIV
### (42 U.S.C. § 1983)

126.    The Campbells incorporate the previous paragraphs by reference as if

set forth at length.

127.    The SWMO is vague in that it does not provide a person of ordinary

intelligence with a reasonable opportunity to know what constitutes an impervious

surface thereunder and to act accordingly to comply with the requirements of the

SWMO.

128.    The SWMO is void for vagueness under the Fourteenth Amendment

in that the definition of impervious surface contains two qualifications applicable

to the question whether the Campbells' driveway is properly included as an

impervious surface.

129.    Section II of the 2011 Ordinance defines "impervious surface" as

follows,

> Impervious Surface (Impervious Area) – A surface that prevents the
> infiltration of water into the ground. Impervious surfaces (or areas)
> shall include, but are not limited to: roofs, additional indoor living
> spaces, patios, garages, storage sheds and similar structures, and any
> new streets and sidewalks. Decks, parking areas, and driveway areas
> are not counted as impervious areas if they do not prevent infiltration.

Any surface area proposed to be initially gravel or crushed stone shall
be assumed to be impervious, unless designed as an infiltration BMP.

Exhibit A.

130.    First, driveways are not counted as impervious surface if they do not

prevent infiltration.

131.    Secondly, gravel driveways, while typically deemed to be impervious

under the SWMO, are not so deemed when the gravel area is designed as an

infiltration BMP..[4]

132.    The SWMO is reasonably interpreted to exclude the Campbells'

driveway from the calculation of impervious surface area under the SWMO, yet

the Township and Sowers, in an arbitrary and discriminatory manner, pursued a

zoning violation against the Campbells and continue to insist upon the preparation,

submission and implementation of a professionally engineered stormwater

management plan, all in violation of the Fourteenth Amendment's guarantee of

procedural due process.

---

[4] The SWMO encourages applicants to implement the development
practices set forth in the Pennsylvania Stormwater Best Management Practices
Manual ("BMP Manual"), a publication promulgated by Pennsylvania Department
of Environmental Protection.  Section 5.7.2 of the BMP Manual specifically
encourages landowners to reduce the perviousness of parking areas by constructing
such areas with "pervious materials (e.g. permeable pavers, grass pavers, *gravel*)"
(italics added).

WHEREFORE, the Campbells pray that the Court ENTER JUDGMENT in their favor and against Lykens Township, Marty Sowers in his personal capacity, and Light-Heigel & Associates, Inc., awarding nominal damages, compensatory damages, attorneys fees and costs, enjoining prosecution of the Campbells under the SWMO for any failure to have an approved exemption from the SWMO for their Property, and granting whatsoever other relief as is just and equitable.

### FOURTH CAUSE OF ACTION
### Failure to Provide Fair Notice
### U.S. Const. amend. XIV
### (42 U.S.C. § 1983)

133. The Campbells incorporate the previous paragraphs by reference as if set forth at length.

134. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of what conduct is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012).

135. The Township's and Sowers' arbitrary enforcement of the SWMO against the Campbells in light of the history of non-enforcement of the SWMO failed to provide the Campbells with notice of what was required of them for their Building.

WHEREFORE, the Campbells pray that the Court ENTER JUDGMENT in their favor and against Defendants Lykens Township, Marty Sowers in his personal capacity, and Light-Heigel & Associates, Inc., awarding nominal

damages, compensatory damages, attorneys fees and costs, enjoining prosecution

of the Campbells under the SWMO for any failure to have an approved exemption

from the SWMO for the gravel driveway now on the Property, and granting

whatsoever other relief as is just and equitable.

Respectfully submitted,

**METTE, EVANS & WOODSIDE**

By:    /s/ Sarah E. Straub
Aaron D. Martin
Pa. Atty. I.D. No. 76441
Sarah E. Straub
Pa. Atty. I.D. No. 330748
3401 North Front Street
P.O. Box 5950
Harrisburg, PA 17110
(717) 232-5000 (phone)
(717) 236-1816 (fax)
admartin@mette.com
sestraub@mette.com

*Attorneys for Plaintiffs,*
*Garth Campbell and Melissa Campbell*

Date: June 30, 2023

2236435v1

30